IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 16-cv-02749-CMA-MJW

5555 BOATWORKS DRIVE LLC,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant Owners Insurance Company's Motion for Summary Judgment, wherein Defendant argues that Plaintiff 5555 Boatworks Drive LLC cannot recover on its claims because it did not satisfy the terms of the parties' insurance contract. (Doc. # 40.) Defendants request that the Court enter summary judgment in its favor and dismiss Plaintiff's case entirely. (*Id.* at 8.) For the reasons described below, the Court grants in part and denies in part Defendant's motion.

## I.   BACKGROUND

Defendant insured the property at 5555 Boatworks Drive, Highlands Ranch, Colorado (the "Property"), pursuant to Policy Number 74041388 (the "Policy") at all relevant times. (Doc. # 3 at 2.) Plaintiff was the direct beneficiary of the Policy. (*Id.*)

Relevant here, the Policy stated that Defendant "[would] not pay for loss or damage caused by or resulting from . . . [w]ear and tear." (Doc. # 40-4 at 4.)

Also relevant to the instant motion, the Policy explained that the insured (Plaintiff) may make a claim for replacement cost instead of or in addition to a claim for actual cash value.[1] (Doc. # 40-1 at 14.) Where an insured seeks the replacement cost, the following restrictions applied:

> 3. Replacement Cost . . .
>   d. We will not pay on a replacement cost basis for any loss or damage:
>     (1) **Until the lost or damaged property is actually repaired or replaced**; and
>     (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
>   e. We will not pay more for loss or damage on a replacement cost basis than the least of:
>     (1) The Limit of Insurance applicable to the lost or damaged property;
>     (2) The cost to replace, on the same premises, the lost or damaged property with other property;
>       (a) Of comparable material and quality; and
>       (b) Used for the same purpose; or
>     (3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(*Id.*) (emphasis added).

On September 29, 2014, the Property was damaged by hail and wind during a severe storm. (Doc. # 3 at 2.) Plaintiff states that damage to the Property is estimated at $577,383.55. (*Id.*) Plaintiff filed a claim with Defendant shortly after the storm, which Defendant acknowledged and assigned an identification number. (*Id.*)

---

[1] "Actual cash value is calculated by subtracting depreciation, determined by age and use, from the replacement cost of the property." (Doc. # 41-1 at 3.)

2

Defendant's adjuster initially inspected the property on November 19, 2014. (*Id.*) In its first damage report, completed on November 28, 2014, Defendant acknowledged damage to the Property's roof vents, parapet walls, entrance cover, ten-ton condenser unit, and condenser coil. (Doc. # 41-1 at 6–7.) It estimated the damage to the Property was worth $31,000.21. (*Id.* at 9.) Defendant issued Plaintiff a payment of $13,348.67 as the actual cash value of the Property and withheld $17,651.54 as the amount of recoverable depreciation. (*Id.* at 3, 9.) Defendant explained in writing that if and when Plaintiff repaired the Property and submitted required documentation, Plaintiff could claim an additional payment of up to $17,651.54. (*Id*. at 3.) Defendant sent a second adjuster to inspect the property on July 7, 2015. (Doc. # 41-2 at 2.)

Defendant also retained an engineering firm to inspect the Property's roof and determine the extent of damage due to the hail storm. (Doc. # 41-3 at 4); *see also* (Doc. # 41 at 2–3.) The engineering report, dated August 14, 2015, concluded that some of the reported damage was not caused by hailstone impacts but rather predated the September 29, 2014, hailstorm or was caused by "mechanical means, such as foot traffic." (*Id.* at 5.)

In a letter dated September 11, 2015, Defendant cited the engineering report and the Policy's terms and informed Plaintiff that "[b]ased on [its] investigation, [Defendant] is respectfully denying coverage for the gravel ballast roof and water intrusion because these damages were not caused by a covered peril." (Doc. # 41-4 at 2–5.)

Defendant issued a revised estimate on January 4, 2016. (Doc. # 41 at 2.) Plaintiff acknowledges that Defendant issued an additional payment so that the actual

cash value of the Property was $24,977.46.  (*Id.*); see (Doc. # 41-2 at 8.)  Defendant withheld $6,846.61 in recoverable depreciation, available if and when Plaintiff completed repairs.  (*Id.*)

In early 2016, Plaintiff retained a public adjuster and demanded appraisal of its claim pursuant to the Policy's appraisal provision.  (*Id.* at 4.)  Defendant declined Plaintiff's demand for appraisal on March 22, 2016, explaining in a letter that there was disagreement over Defendant's "denial of the replacement of the gravel ballast roof on [the Property]."  (Doc. # 41-6 at 2.)  Defendant stated that based on its September 11, 2015, letter, "replacement of the gravel ballast roof on [the Property] would not be covered by this policy.  Coverage issues are not appraisable."  (*Id.* at 5.)

Plaintiff filed the instant suit against Defendant on September 29, 2016, in Douglas County District Court, bringing claims for: (1) breach of contract; (2) bad faith breach of insurance contract; and (3) statutory bad faith pursuant to Colo. Rev. Stat. §§ 10-3-1115, -1116.  (Doc. # 3.)  Plaintiff argues that by "refus[ing] to pay" Plaintiff with "the intent of delaying payment and reducing the covered benefit," Defendant has breached its contractual duties and has done so in bad faith.  (*Id.* at 2.)  Defendant removed the action to this Court.  (Doc. # 1.)

Defendant moved for summary judgment on all claims on August 11, 2017. (Doc. # 40.)  Plaintiff timely filed its response brief on September 1, 2017 (Doc. # 41), and Defendant filed its reply brief on September 15, 2017 (Doc. # 45).

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party

may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in her favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III. DISCUSSION

**A. BREACH OF CONTRACT CLAIM**

Plaintiff claims that Defendant breached the contract because it has "refused to pay [Plaintiff] the benefits due . . . under the Policy." (Doc. # 3 at 2.) Plaintiff later specifies its claim concerns "coverage for the roof," stating that Defendant refused to cover the roof because it believed there was not damage to the roof from a covered peril.[2] (Doc. # 41 at 7, 3.) Plaintiff characterizes its suit as being "fundamentally a dispute about damage from a covered peril, not about actual cash value versus replacement cost value." (*Id.* at 6.)

In its Motion for Summary Judgment, Defendant does not address its initial coverage determinations. *See* (Doc. # 40.) It explains only why it did not pay Plaintiff the replacement cost value of the roof. (*Id.*) Defendant argues that, pursuant to the parties' Policy, it is not obligated to pay Plaintiff any replacement costs "[u]ntil the lost or

---
[2] In Plaintiff's view, Defendant "only admitted damage to the soft metals on the roof and to a condenser unit and condenser coil." (Doc. # 41 at 3.)

6

damaged property is actually repaired or replaced." (Doc. # 40 at 1–2); *see* (Doc. # 40-1 at 14.) Defendant reasons that because Plaintiff has yet to repair or replace the Property, it has not abided by the terms of the Policy and cannot yet recover under its breach of contract claim. (*Id.* at 2.)

Under Colorado law,³ "In order to avoid policy coverage, an insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretations." *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991) (citing *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2nd Cir. 1989)). An insurer is not excused from its coverage duties "unless there is no factual or legal basis on which the insurer might be held to indemnify the insured." *Melssen v. Auto-Owners Ins. Co.*, 285 P.3d 328, 333 (Colo. App. 2012) (citing *Hecla*, 811 P.2d at 1090). This is a "heavy burden." *Hecla*, 811 P.2d at 1089.

Here, Defendant denied coverage for damage to the "gravel ballast roof for the [Property] . . . since there was no direct physical damage from a covered cause of loss." (Doc. # 41-4 at 5.) Relying on its retained engineering firm's report, *see* (Doc. # 41-3), inspections, and weather data, Defendant concluded that the roof was "not damaged by hailstone impacts" but instead by "mechanical means, such as foot traffic," a type of wear and tear.⁴ (Doc. # 41-4 at 2.) Defendant did not provide coverage for the actual

---

³ A federal court, sitting in diversity, must apply the substantive law of the forum state. *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009).
⁴ As the Court noted above, the Policy precludes coverage for damage resulting from "[w]ear and tear." (Doc. # 41-4 at 4.)

7

cash value of the roof because it believed the damage was caused by wear and tear, and thus explicitly excluded from coverage.

Plaintiff disputes that damage to roof occurred from wear and tear. It contends that the damage resulted from hail and wind during the storm on September 29, 2014—and therefore resulted from a covered loss. (Doc. # 3 at 2.) Plaintiff relies on its retained architect's report, *see* (Doc. # 41-7), emphasizing that the architect concluded in his "building damage assessment" that "direct physical damage" to "the polyiso facer of the roof . . . was caused by wind-driven hail on September 29, 2014." (Doc. # 41 at 4.) According to Plaintiff, the architect's assessment "is prima facie evidence that the roof of Plaintiff's property was damaged by the September 29, 2014[,] wind and hail storm and that Defendant failed . . . to provide coverage for the damage to the roof of Plaintiff's property." (*Id.* at 4–5.)

Viewing the evidence in light most favorable to Plaintiff, the non-moving party, *see Allen*, 119 F.3d at 839, the Court concludes that the cause of the roof damage is a genuine issue of material fact. Plaintiff has satisfactorily set forth specific facts "that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *See Adler*, 144 F.3d at 671. Specifically, a rational trier of fact could find that the roof damage was caused by hail losses and that Defendant therefore breached its contract by failing to pay Plaintiff the actual cash value of the roof.

Defendant does not endeavor to argue otherwise in its Motion for Summary Judgment, instead describing this dispute over causation as "immaterial." (Doc. # 40 at

8

2.) The Court disagrees. Causation is relevant, as Plaintiff's breach of contract claim arises from Defendant's conclusion that the damage to the roof did not result from a covered peril. Defendant is therefore not entitled to judgment as a matter of law on Plaintiff's breach of contract claim. *See Hecla*, 811 P.2d at 1089 ("Whether coverage is ultimately available under the contract is a question of fact to be decided by the trier of fact" (citing *Reliance Ins. Co. v. Martin*, 467 N.E.2d 287, 290 (Ill. App. Ct. 1984))); s*ee also Melssen*, 285 P.3d at 333.

**B.  BAD FAITH BREACH OF CONTRACT CLAIM AND STATUTORY BAD FAITH CLAIM**

Under Colorado law, an insurer must deal in good faith with its insured, *Decker v. Browning-Ferris Indus. of Colo.*, 931 P.2d 436, 443 (Colo. 1997), because every contract contains an implied duty of good faith and fair dealing, *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004). *See also* Colo. Rev. Stat. § 10-3-1113(1). An insurer's breach of this duty gives rise to a tort cause of action. *Goodson*, 89 P.3d at 414 (citing *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). For a first-party insured to prove that an insurer breached the contract in bad faith, the insured must prove: (1) "the insurer acted unreasonably under the circumstances," and (2) "the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Id.* (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)); *see also* Colo. Rev. Stat. § 10-3-1113(3). At the first prong, the reasonableness of the insurer's conduct "must be determined objectively, based on proof of industry standards." *Id*.

Similarly, an insurer also has a statutory duty to "not unreasonably delay or deny payment of a claim for benefits" of a first-party insured. Colo. Rev. Stat. § 10-3-1115(1)(a). A first-party insured whose claim has been unreasonably delayed or denied "may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." *Id*. at § 10-3-1116(1). An insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Id*. at § 10-3-1115(2). What constitutes reasonableness under specific circumstances is ordinarily a question of fact for the jury. "However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012).

Defendant argues that "Plaintiff's Complaint is devoid of facts regarding how [Defendant] . . . acted in bad faith." (Doc. # 40 at 6.) The Court agrees. In its common law bad faith breach of an insurance contract claim, Plaintiff asserts that Defendant "acted unreasonably and breached its duties of good faith and fair dealing" by acting in the "following unreasonable" ways:

    a. Failing to properly investigate and evaluate Plaintiff's claims for Policy Benefits;
    b. Failing to pay Plaintiff the full benefits owed under the Policy;
    c. Failing to pay amounts under the Policy in a timely manner;
    d. Failing to effectuate a prompt, fair, and equitable settlement of Plaintiff's claims;
    e. Failure to give equal consideration to Plaintiff's rights and interests as it has given its own interests;
    f. Depriving Plaintiff of the benefits and protections of the contract of insurance;
    g. Compelling Plaintiff to institute litigation in order to recover amounts due under the Policy; and
    h. Other conduct to be revealed through discovery.

(Doc. # 3 at 3.) In its statutory claim, Plaintiff merely alleges that Defendant "delayed or denied payment of covered benefits to Plaintiff without a reasonable basis for that action." (*Id.* at 4.) These allegations are "conclusory statements" based on Plaintiff's subjective beliefs and "do not constitute summary judgment evidence." *See Bones*, 366 F.3d at 875. By contrast, Defendant explains at length that it investigated Plaintiff's claims, retained an engineering expert to report on causation, issued actual cash value payments for damage it determined was covered by the Policy, explained its coverage decisions, and gave Plaintiff several opportunities to submit additional information. *See, e.g.*, (Doc. # 45 at 5.)

Nowhere in its Complaint or its Response to Defendant's Motion for Summary Judgment does Plaintiff "set forth specific facts showing that there is a genuine issue for trial"—here, that Defendant acted unreasonably. *See Anderson*, 477 U.S. at 256. Plaintiff does not even respond to Defendant's arguments as to these claims in its Motion for Summary Judgment. *See* (Doc. # 41.) The Court is therefore satisfied that Defendant has shown that there are no genuine issues of material fact and that the reasonableness of Defendant's conduct may be decided as a matter of law. Defendant is entitled to summary judgment on Plaintiff's bad faith breach of contract claim and statutory bad faith claim.

## IV.     CONCLUSION

Accordingly, the Court ORDERS that Defendant's Motion for Summary Judgment (Doc. # 40) is DENIED as to Plaintiff's breach of contract claim. It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's bad faith breach of contract claim and statutory bad faith claim.

DATED: December 13, 2017

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge